UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:23-CV-00073-GNS-HBB

**CLETUS K. OPPONG,** *M.D.*                                              **PLAINTIFF**

VS.

**OWENSBORO HEALTH**
**MEDICAL GROUP, INC.**                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Plaintiff Cletus K. Oppong for leave to file an amended complaint (DN 19). Defendant Owensboro Health Medical Group, Inc. ("OHMG") has filed a response in opposition (DN 21), and Oppong has filed a reply (DN 30). Additionally, on October 10, 2023, the undersigned conducted a telephonic conference to obtain clarification from Oppong as to which factual allegations within the tendered amended complaint were alleged to support the new causes of action.

### Nature of the Case

OHMG employed Oppong as an occupational medicine physician. He was employed under a two-year contract and at the expiration of the contract elected not to renew it. His original Complaint (DN 1) set forth three employment-based causes of action: racial discrimination, hostile work environment, and retaliation. His tendered amended complaint seeks to add six additional claims: breach of contract, implied duty of good faith and fair dealing, claims under the Kentucky Civil Rights Act, claims under the Kentucky Deceptive Trade Practices Act, intentional infliction of emotional distress, and negligent infliction of emotional distress. The amended complaint also sets forth a claim for constructive trust; however, during the telephonic conference, Oppong indicated that he was not pursuing that claim.

Legal Standard

Fed. R. Civ. P. 15(a)(2) states that leave to amend a complaint shall be freely granted "when justice so requires." This liberal standard has led courts to conclude that "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Colvin v. Caruso, 605 F.3d 282, 294 (6th Cir. 2010) (quoting Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995)). According to Rose v. Hartford Underwriters Insurance Company, 203 F.3d 417, 420 (6th Cir. 2000), "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."

In order to survive a motion to dismiss, a complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain enough factual material to satisfy the basic requirements of Rule 8, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must at least be sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A set of facts is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

1. Breach of Contract

Oppong's claim for breach of contract is set forth at paragraphs 156-159 (DN 19). He alleges that he and OHMG entered into a contract for a term of years and that OHMG's acts of

commission and omission amounted to a breach of that contract. During the telephonic conference, Oppong indicated that the factual support for the claim was set forth in paragraphs 5-9, 32-46, 51-53 and 55-58 of the amended complaint.

Paragraphs 5-9 allege that he and OHMG entered into a formal contract for employment for two years, from August 1, 2020 through August 1, 2022. Paragraphs 32-46 contend that Oppong was assigned both patient care duties as well as supervisory duties. He further alleges that he was given instructions to engage in conduct he believed was unethical, including to backdate forms and change medical review officer determinations. He eventually requested to be relieved of supervisory duties for this reason. He contends that patient charts were left in his office so as to make it appear he was not attending to his patient care responsibilities in a timely manner. Paragraphs 51-53 assert that he was subjected to disparate treatment due to his race and nationality. Paragraphs 55-58 contend that, because of workplace hostility he found it difficult to do his job and, ultimately "[w]ith no viable alternative, Dr. Oppong was forced to decide not to renew his contract, but rather to give notice that he would not be renewing said contract, effective once his initial two-year contract was completed" (DN 19 at ¶ 58).

Generally, courts may not consider matters outside the pleadings in reviewing a motion to dismiss under Rule 12(b)(6) except when the motion is treated as a motion for summary judgment under Rule 56. However, a court may consider exhibits attached to the complaint so long as they are referred to in the complaint and are central to the claims without converting the motion to one for summary judgment. Bradley v. Jefferson Cnty. Pub. Sch., 598 F. Supp. 3d 552, 557-58 (W.D. Ky. 2022). Oppong attached a copy of his employment agreement as an exhibit to his amended complaint. (DN 19, Ex. 1). The contact is referenced in the complaint and is central to his claims.

The term of the employment agreement was two years, with a provision for automatic renewal for successive one-year terms unless at least 90 days advance written notice was provided to the other party of the intention not to renew. (Id. at ¶ 2.1). In addition to provisions for termination of the contact for cause by either party, the contract also sets forth that the parties could terminate the contract upon mutual consent, or either party could terminate the contract without cause upon at least 90 days advance written notice. (Id. at ¶¶ 6.3 & 6.4).

A party alleging breach of contract must establish three things: (1) the existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract. Veritiv Operating Co. v. Phoenix Paper Wickliffe, LLC, No. 5:21-CV-170-TBR, 2021 U.S. Dist. LEXIS 243049, at *13 (W.D. Ky. Dec. 21, 2021). Here, Oppong alleges that he exercised his contractual option not to renew at the expiration of the initial term and was compelled to do so due to OHMG's wrongful conduct toward him during the initial term. Oppong's claim bears resemblance to one for constructive discharge. "A constructive discharge occurs when 'based upon objective criteria, the conditions created by the employer's action[s] are so intolerable that a reasonable person would feel compelled to resign.'" Deane v. W. Ky. Univ., No. 2021-CA-0083-MR, 2022 Ky. App. Unpub. LEXIS 281, at *11 (Ky. App. May 20, 2022) (quoting Brooks v. Lexington-Fayette Urban Cnty. Housing Auth., 132 S.W.3d 790, 807 (Ky. 2004)). A constructive discharge can be considered a breach of an employment contract. Id. Can an employee be constructively compelled not to renew an employment contract due to wrongful treatment by an employer so as to support a claim for breach of contract? This is a question of law neither party addressed in their pleadings and the undersigned has not identified any guidance in caselaw. Consequently, for the present the undersigned is unable to conclude that Oppong's claim for breach of contract could not withstand challenge on a motion to dismiss and he is permitted to proceed with that claim.

The undersigned recognizes OHMG has argued Oppong's claim for breach of contract is related to his Employee Retirement Income Security Act of 1974 (ERISA) benefits plan and is therefore preempted by ERISA. However, with the benefit of Oppong's specification of which portions of the Complaint he alleges support the breach of contract claim, the undersigned concludes that he has identified facts independent of the benefits plan such that it is not preempted by ERISA.

2. Implied Duty of Good Faith and Fair Dealing

Oppong contends that OHMG had a duty to good faith and fair dealing with him in the implementation of the employment contract, that it breached that duty, and that he was damaged as a result (DN 19, ¶ 161-163). In support of this claim, he has identified the same factual assertions as those underpinning his previously discussed claim for breach of contract.

Claims for breach of the implied covenant of good faith and fair dealing are barred as duplicative when such claims are mere repetitions of the breach of contract claims. Babbs v. Equity Grp. Ky. Div. LLC, No. 1:19-CV-00064-GNS, 2019 U.S. Dist. LEXIS 178677, at *8 (W.D. Ky. Oct. 16, 2019). Here, Oppong's claim for breach of the implied duty is factually duplicative of his claim for breach of contract and could not survive a motion for dismissal. Oppong's claim for breach of implied duty of good faith and fair dealing will not be permitted to proceed.

3. Kentucky Civil Rights Act

Oppong asserts a claim under KRS 344.010 *et seq.*, the Kentucky Civil Rights Act. His Complaint asserts that he was subjected to discrimination on the basis of race and color—African American and black. He further contends that he was subjected to discrimination on the basis of national origin—Ghanaian. He further asserts that he timely filed a civil rights complaint with the

Equal Employment Opportunity Commission and was issued a notice of right to bring suit (DN 19, ¶¶ 165-176).

Oppong's factual contentions are that he is African American (Id. at ¶ 31). He further alleges that he was asked to engage in employment activities he considered unethical (Id. at ¶¶ 35-38). He further alleges that, as a result he asked to be relieved of supervisory duties and this resulted in retaliatory actions (Id. at ¶¶ 44-46; 55-57). He makes similar factual allegations that his being black and from Ghana motivated the retaliatory actions (Id. at ¶¶ 51-53).

KRS 344.040(1)(a) prohibits employer discrimination in terms of compensation, terms, conditions or privileges of employment against any person on the basis of race, color or national origin. Similarly, section (b) prohibits discrimination in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee on the basis of race, color, or national origin. The undersigned concludes that Oppong has alleged sufficient factual basis for this claim to proceed.

As with Oppong's breach of contract claim, the undersigned recognizes OHMG has argued Oppong's claim for discrimination is related to his Employee Retirement Income Security Act of 1974 (ERISA) benefits plan and is therefore preempted by ERISA. However, with the benefit of Oppong's specification of which portions of the Complaint he alleges support the discrimination claim, the undersigned concludes that he has identified facts independent of the benefits plan such that it is not preempted by ERISA.

4. Kentucky Deceptive Trade Practices Act

Oppong contends that OHMG violated the Kentucky Deceptive Trade Practices Act, to which he cites KRS 367.010, *et seq*. The actual name of the Act is the Consumer Protection Act.

KRS 367.120(2). He contends that OHMG violated the statute's prohibition against unfair, false, misleading or deceptive practices in trade or commerce (Id. at ¶¶ 178-184).

"[T]he KCPA provides a private remedy to '[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal,' as a result of a violation of KRS § 367.170." Helton v. Am. Gen. Life Ins. Co., 946 F. Supp. 2d 695, 701 (W.D. Ky. 2013) (quoting KRS 367.220(1)). Oppong has identified paragraphs 31, 35-38, 40-46, 51-53, 55-57 and 64-69 as supporting his claim. All of those paragraphs discuss the manner in which he contends OHMG discriminated against him in terms of his employment. The Act affords no cause of action by an employee against an employer. Bowen v. Paxton Media Grp., LLC, No. 5:21-CV-00143-GNS, 2022 U.S. Dist. LEXIS 162083, at *26 (W.D. Ky. Sept. 8, 2022). For this reason, the claim may not proceed.

5. Intentional Infliction of Emotional Distress

In paragraphs 186-190 Oppong asserts a claim for intentional infliction of emotional distress (IIED), arising from his claims that he was subjected to racial discrimination in the course of his employment.

> The KCRA acts to preempt other employment claims based in the same facts. "[T]he same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove sex discrimination in employment practices *also structures the remedy*." Grzyb v. Evans, 700 S.W.2d 400, 401 (Ky. 1985) (emphasis added). The KCRA, then, "not only *creates* the public policy but *preempts the fields of its application*." Id.; see also Watts v. Lyon County Ambulance Service, 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014) ("To the extent the basis for this claim [wrongful discharge in violation of public policy] is the same as that for his Title VII and KCRA claims, it is preempted and subsumed by those more specific laws.").
>
> Two of [plaintiff's] claims are clearly preempted by the KCRA. First, "Kentucky courts have consistently held that where a plaintiff pursues relief under the Kentucky Civil Rights Act, a claim of IIED based on the same employer conduct

is barred." Bogle v. Luvata Franklin, Inc., 2013 U.S. Dist. LEXIS 44388, 2013 WL 1310753, at *2 (W.D. Ky. 2013) Boggs v. Appalachian Reg'l Healthcare, No. 7:20-CV-151-REW, 2021 U.S. Dist. LEXIS 226226, at *12 (E.D. Ky. July 16, 2021).  As Oppong is asserting a claim for relief under the KCRA, his claim for IIED is preempted and may not proceed.

6. Negligent Infliction of Emotional Distress

In Complaint paragraphs 192-196 Oppong claims that OHMG negligently subjected him to racial discrimination and negligently created a hostile workplace.  As with his claim for IIED, his claim for negligent infliction of emotional distress is preempted by the KCRA.

> "The KCRA acts to preempt other employment claims based in the same facts." Boggs, 2021 U.S. Dist. LEXIS 226226, 2021 WL 5413801, at *5.  Thus, this Court has held that claims for negligent infliction of emotional distress are preempted by the KCRA when those claims "are based on the same allegedly discriminatory conduct as [the plaintiff's] claims under the [KCRA]." Willis v. CMM of Indiana, LLC, No. 07-548-C, 2008 U.S. Dist. LEXIS 48293, 2008 WL 2548803, *2 (W.D. Ky. June 23, 2008) (citations omitted).  Here, Plaintiff's negligent infliction of emotional distress claim is based in the same facts that form the basis for her KCRA claims, and her negligent infliction of emotional distress claim is therefore "subsumed by her [KCRA] claim, and she is limited to the remedy provided by the KCRA." Id. (citation omitted).

Johnson v. Pennyrile Allied Cmty Servs., No. 5:20-CV-071-TBR, 2022 U.S. Dist. LEXIS 62273, at *56-57 (W.D. Ky. Apr. 4, 2022).  Oppong's claim for negligent infliction of emotional distress may not proceed.

**WHEREFORE**, Plaintiff's motion for leave to amend the complaint, DN 19, is **GRANTED IN PART and DENIED IN PART**.  Plaintiff's claims for breach of contract and under the Kentucky Civil Rights Act may proceed.  His claims for implied duty of good faith and fair dealing, the Kentucky Consumer Protection Act (designated in the amended complaint as the Kentucky Deceptive Trade Practices Act), for intentional infliction of emotional distress, and for

negligent infliction of emotional distress may not proceed. Plaintiff has indicated he has abandoned his claim under a constructive trust theory, so that cause of action is rendered moot.

October 12, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:    Counsel of Record