## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:23-CV-00073-GNS-HBB

**CLETUS K. OPPONG,** *M.D.*                                                                                    **PLAINTIFF**

**VS.**

**OWENSBORO HEALTH**
**MEDICAL GROUP, INC.**                                                                                          **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion to amend the complaint (DN 40). Defendant Owensboro Health Medical Group, Inc. ("OHMG") filed a response (DN 42). Plaintiff filed a reply (DN 46). On the same day, Plaintiff also filed a "Motion For Leave to Reply to Defendant's Response to Plaintiff's Motion for Leave to File Second Amended Complaint," (DN 47), however, besides including a proposed order, the memorandum in support is a duplicate of Plaintiff's Reply. DN 47 is denied.

### I.     BACKGROUND

OHMG employed Oppong as an occupational medicine physician. He was employed under a two-year contract and at the expiration of the contract elected not to renew it. His original Complaint (DN 1) set forth three employment-based causes of action: racial discrimination, hostile work environment, and retaliation. Oppong filed an earlier motion to amend, which the undersigned granted in part and denied in part. Oppong's current motion to amend adds six new claims and names nine new individual defendants. Specifically, Oppong seeks to add four civil RICO claims under 18 U.S.C. § 1962(a)-(d), a claim of mail and wire fraud under 18 U.S.C. §§ 1341, 1343, and a claim of money laundering under 18 U.S.C § 1956.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be freely granted when justice so requires. In light of this liberal view, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Colvin v. Caruso, 605 F.3d 282, 294 (6th Cir. 2010) (quoting Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Further, a district court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009). But the court "need not accept a 'bare assertion of legal conclusions.'" Id. (quoting Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995)).

## III. DISCUSSION

Oppong's motion to amend to include the civil RICO claims is futile as he does not have proper standing to bring the claims and he does not sufficiently state a claim for which relief can be granted.

A. <u>Standing to Raise a Civil RICO Claim (Claims Six, Seven, Eight, and Nine)</u>

Oppong's § 1962 claims would be dismissed for lack of standing due to the type of injury he has alleged. 18 U.S.C. § 1964(c) states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . .

<u>Id.</u>; <u>Grow Mich., LLC v. LT Lender, LLC</u>, 50 F.4th 587, 594 (6th Cir. 2022). "[C]ourts 'have uniformly recognized that the ordinary meaning of the phrase "injured in his business or property" excludes personal injuries, including the pecuniary losses therefrom.'" <u>Tucker v. Ky. Farm Bureau Mut. Ins. Co.</u>, 631 F. Supp. 3d 438, 445 (E.D. Ky. 2022) (citation omitted). "In other words, injuries that are facially 'personal'-stemming from damage to one's person without other monetary harm-are excluded from RICO without further analysis." <u>Id.</u>

> [T]he distinction between actionable damages and non-actionable damages in a RICO case depend on "the origin of the underlying injury," and not the type of injury suffered or the cause of the injury itself. <u>Id.</u> at 565. Thus, damages of any nature in a RICO case must stem from an injury to one's business or property rather than an injury to oneself. *See also* <u>id.</u> at 565-66 ("[T]he concept is clear: both personal injuries and pecuniary losses flowing from those injuries fail to confer relief under [civil RICO].")

<u>Id.</u>; <u>Lawson v. FMR LLC</u>, 554 F. Supp. 3d 186, 195 (D. Mass. 2021) (collection of cases finding injuries to plaintiff's reputation, dignity, and emotional damages are not addressable through RICO); *see* <u>Dunleavy v. Wayne Cnty. Comm'n</u>, Civil Action No. 04-CV-74670-DT, 2006 U.S. Dist. LEXIS 104068, at *6-19 (E.D. Mich. May 11, 2006) (finding a plaintiff does not have a property interest in continued employment or the loss of an employment opportunity when the plaintiff worked in a completed term position.); <u>Bowman v. W. Auto Supply Co.</u>, 985 F.2d 383, 385 (8th Cir. 1993) ("circuit courts that have are in agreement that an employee discharged for

3

criticizing or refusing to participate in the employer's racketeering activity lack standing to bring a civil suit when the underlying violation is based on section 1962(a)-(c) of RICO.") (citing a collection of cases); Dunn v. Bd. of Incorporators of the African Methodist Episcopal Church, Civil Action No. 3:00-CV-2547-D, 2002 U.S. Dist. LEXIS 5863, at *6 (N.D. Tex. Apr. 5, 2002) ("'whistle-blowers,' or those who suffer an adverse employment action after reporting alleged RICO violations do not have standing to sue under RICO for the injury caused by their firing or constructive discharge, since the causal nexus between the predicate acts and the employer's decision to take action against the whistle-blowing employee is too tenuous."). Further, "[i]njury to speculative or expectancy interests is not cognizable under RICO." Lewis v. Drouillard, 788 F. Supp. 2d 567, 571 (E.D. Mich. 2011).

Oppong's requested damages are not recoverable under RICO as they stem from a personal injury, not from an injury to Oppong's business or property. Oppong seeks relief for the deprivation of the $20,000 employer contributions, constructive discharge, suffered loss of self-esteem, lost career advancing opportunities, emotional distress, loss of reputation, loss of enjoyment of life, and emotional distress. RICO is not the proper vehicle to seek relief for these personal injury claims.

As to the $20,000 employer contributions, Oppong alleges these were withheld from him due to retaliation, while also stating he was cheated out of his FSA contributions (DN 40, ¶¶ 80, 224-25, 228). Oppong makes conclusory statements that the $20,000 is itself a form of racketeering, while claiming it is a form of retaliation. This posits the claim to be a personal injury instead of an injury to his business or property.

4

B. Failure to State a Claim for Civil RICO Claims

1. § 1962(c)

Oppong fails to meet the required elements of § 1962. For a § 1962(c) claim, Oppong needs to allege (1) conduct, (2) enterprise, (3) through a pattern (4) of racketeering activity.

> To establish a "pattern of racketeering activity," plaintiff must sufficiently allege (1) at least two predicate acts of racketeering activity within a ten-year period constituting a pattern of (2) related and (3) continuous racketeering behavior. Moon v. Harrison Piping Supply, 465 F.3d 719, 723-24 (6th Cir. 2006). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail and wire fraud and money laundering statutes. 18 U.S.C. § 1961(1).

Stooksbury v. Ross, No. 3:09-CV-498, 2011 U.S. Dist. LEXIS 48552, at *12-13 (E.D. Tenn. Apr. 29, 2011); Estate of Wyatt v. WAMU/JP Morgan Chase Bank, No. 09-14919, 2012 U.S. Dist. LEXIS 37128, at *15 (E.D. Mich. Mar. 20, 2012).

The Sixth Circuit applies the "relationship plus continuity test." Heinrich v. Waiting Angels Adoption Servs., 668 F.3d 393, 409-10 (6th Cir. 2012). The Appeals Court explained the test as follows:

> To establish a substantive RICO violation, a plaintiff must show "a pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). While the statute defines the minimum number of acts necessary to establish a pattern of racketeering activity, the Supreme Court has held that the minimum two acts are not necessarily sufficient. In order to show a "pattern" of racketeering activity, a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H. J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237-39, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). This requirement has come to be called the "relationship plus continuity" test. *See, e.g.,* Brown v. Cassens Transp. Co., 546 F.3d 347, 355 (6th Cir. 2008).
>
> The relationship prong of this test is satisfied by showing the predicate acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H. J. Inc., 492 U.S. at 240.
> . . .

5

>The continuity prong of the test can be satisfied by showing either a "close-ended" pattern (a series of related predicate acts extending over a substantial period of time) or an "open-ended" pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed). Id. at 241-42. The plaintiffs cannot establish close-ended continuity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy this [close-ended continuity] requirement. . . ." Id. at 242. (omitted text addresses the threat of future criminal conduct, which is part of an open-ended continuity analysis). This court has found that racketeering activity that spanned seventeen months did not constitute a substantial period of time. See Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994) (finding that allegations of four predicate acts, affecting one victim and spanning seventeen months, were insufficient to meet the continuity requirement).

Id.; Flamengos Invs., LLC v. Brookwood Capital Partners, LLC, No. 1:22-cv-489, 2024 U.S. Dist. LEXIS 13793, at *28-29 (S.D. Ohio Jan. 25, 2024); Cyr v. Fred Battah Real Value Prods., LLC, No. 22-10290, 2023 U.S. Dist. LEXIS 20450, at *9-10 (E.D. Mich. Feb. 7, 2023).

Oppong's proposed amended complaint fails to show a pattern of racketeering. For his § 1962(c) claim, Oppong alleges:

>Defendants agreed to, and did conduct and participate in, the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Dr. Oppong. Specifically, the Count Eight Defendants deprived Dr. Oppong of legitimate lunch breaks by assigning him active patient charts during that time slot; by pressuring Dr. Oppong to backdate APC health records; by creating a hostile work environment; and by taking his FSA contributions.
>
>Pursuant to and in furtherance of their fraudulent scheme, the Count Eight Defendants committed multiple related acts of racial discrimination; breach of Dr. Oppong's contract; fraudulent backdating of government forms or criminally ordering Dr. Oppong to do same; repeatedly bribing Dr. Oppong $500 per month, disguised as incentive bonuses, to induce him to alter and backdate APC public records; cheated Dr. Oppong out of $20,000 in FSA contributions; and engaged in other racketeering acts in concert with Empower, Defendant OHMG's Plan Administrator, and other individuals or entities whose identities may be ascertained during discovery.

(DN 40 ¶¶ 224-25). Oppong has not sufficiently pleaded the minimum required two acts of racketeering.[1] Further, his claims do not satisfy the relationship prong because he does not allege the "predicate acts were committed by the same participants . . . for similar purposes with similar victims using similar methods of commission." Heinrich, 668 F.3d at 409. He fails to demonstrate either a close-ended or opened-ended pattern. Oppong's claims "are inadequate because a scheme involving a single objective to defraud a single victim cannot sustain a closed-period continuity § 1962(c) claim." Cyr, 2023 U.S. Dist. LEXIS 20450, at *10.

2. § 1962(a)

To state a claim under § 1962(a), Oppong must allege that (1) defendant used or invested racketeering income to acquire or maintain an interest in the alleged enterprise, and (2) that plaintiff suffered injury as a result of that investment by the defendant. Zuhovitzky v. UBS AG CHE 101.329.562, No. 21-Civ. 11124(KPF), 2023 U.S. Dist. LEXIS 123678, at *29 (S.D.N.Y. July 18, 2023). A plaintiff "must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, *distinct from* any injuries caused by the predicate acts of racketeering." Vemco, Inc. v. Camardella, 23 F.3d 129, 132 (6th Cir. 1994). Here, Oppong points to the withheld $20,000 employer contributions but also seems to claim this is the predicate act of racketeering and also the injury of racketeering (DN 40 ¶¶ 193-95). It cannot be both, and under "[t]his Circuit's pleading requirement of a so-called 'investment injury'" Oppong does not adequately state a claim for which relief can be granted under this section of § 1962. Id.

---

[1] Oppong, unclearly, later in his proposed amended complaint, raises two new claims of mail and wire fraud and money laundering. For reasons discussed later in this opinion, the undersigned finds Oppong has not sufficiently alleged under either criminal statute that a predicate act occurred.

7

3. § 1962(b)

To State a claim under § 1962(b), "the plaintiff cannot merely allege that he was injured by the predicate act of racketeering; rather, he must demonstrate that the defendant acquired or maintained control of an enterprise through a pattern of racketeering activity." Jersevic v. Kuhl, Case Number: 00-CV-10113-BC, 2002 U.S. Dist. LEXIS 1109, at *11 (E.D. Mich. Jan. 4, 2002) (citing Whaley v. Auto Club Ins. Assoc., 891 F. Supp. 1237, 1242 (E.D. Mich. 1995)). Oppong's proposed amended complaint only contains conclusory statements regarding Defendants' maintenance of an interest in an enterprise, and there are no facts that would establish either that the individual defendants had acquired or maintained control of an enterprise through a pattern of racketeering.

4. § 1962(d)

As Oppong fails to state a claim under § 1962(a)-(c), his § 1962(d) claim would be dismissed. "To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" Heinrich, 668 F.3d at 411 (quoting United States v. Sinito, 723 F.2d 1250, 1260 (6th Cir. 1983)). Oppong fails to establish the elements of a RICO violation, and the proposed amended complaint does not allege sufficient details of a conspiracy. Consequently, this claim would be dismissed.

C. Mail and Wire Fraud Claim & Money Laundering (Claims Ten and Eleven)

Oppong seeks to add two claims of mail/wire fraud and money laundering claims, both under federal criminal statutes. 18 U.S.C. §§ 1341, 1343; 18 U.S.C. § 1956(a)(1)(A)(i). Though he raises them as individual counts, Oppong attempts to show that both alleged violations of the

8

federal criminal code are predicate acts for his civil RICO claims. To establish mail or wire fraud as a predicate the plaintiff must:

> "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008) (quoting Gupta v. Terra Nitrogen Corp., 10 F.Supp.2d 879, 883 (N.D. Ohio 1998)).

Heinrich, 668 F.3d at 404–05. Oppong has not attempted to meet any of the required elements to establish Defendants' conduct amounted to mail or wire fraud as a predicate act. For money laundering, Oppong is required to allege Defendants "conducted financial transactions knowing that the transactions involved the proceeds of specified unlawful activity. . . [and] engaged in the transaction with the intent to either promote the continuation of the unlawful activity or knowing that the transactions were designed to conceal the proceeds of the unlawful activity." Fields v. PHH Mortg. Corp., No. 1:16-cv-391, 2016 U.S. Dist. LEXIS 137717, at *5-6 (S.D. Ohio Sep. 19, 2016). Oppong only provides conclusory statements regarding Defendants' conduct and thus does not sufficiently plead money laundering to establish a predicate act.

Additionally, as the undersigned has concluded above that he does not have standing to bring the RICO claim nor has he established a pattern of racketeering, these claims are futile. If, however, Oppong is bringing these claims independent of his RICO claims, he possesses no private right of action against the Defendants for alleged violations of 18 U.S.C. §§ 1341, 1343; 18 U.S.C. § 1956(a)(1)(A)(i). "Violations of these sections of the federal criminal code do not give rise to independent, private causes of action." Saro v. Brown, 11 F. App'x 387, 387 (6th Cir. 2001) (citing Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 386 (6th Cir. 1997).

9

## IV. ORDER

**IT IS HEREBY ORDERED** that Plaintiff's second motion to amend the complaint, DN 40, is **DENIED**. **IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply, DN 47, is **DENIED**.

March 19, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:    Counsel of Record